NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0461n.06

No. 20-6088

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Oct 13, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff-Appellee*, | ) | |
| | ) | ON APPEAL FROM THE |
| v. | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF TENNESSEE |
| WILLIAM E. ECHOLS, | ) | |
| | ) | |
| *Defendant-Appellant*. | ) | |
| | ) | |

Before: MOORE, KETHLEDGE, and DONALD, Circuit Judges.

KETHLEDGE, Circuit Judge. Five inmates were picking up roadside trash when one of them found a six-pound bag of methamphetamine. The inmates smuggled some of the meth back into jail, where they shared it with other inmates. A jury later found one of the inmates on the trash detail, William Echols, guilty of possessing methamphetamine with the intent to distribute and of conspiring to do the same. Echols now argues that the evidence was insufficient to support his convictions. We disagree and affirm.

I.

In October 2018, William Echols, an inmate at Jefferson County Jail in Tennessee, was picking up trash along a road with four other inmates—Bill Baker, Tim Ritchie, Trey Carr, and Brian Appleton. A deputy sheriff supervised the group and drove a short school bus alongside.

Ritchie found a black plastic grocery bag holding over six pounds (2,832 grams) of methamphetamine. He told the other inmates he had found a "key of dope" and the inmates—including Echols—crushed and snorted some of it. Echols knew the meth was real when he felt its effect seven to ten minutes later.

Appleton stashed most of the meth in the woods, and Ritchie brought about a half pound onto the bus. Echols and the other inmates each passed their sandwich bags from lunch to Ritchie so that he could divide the meth into smaller quantities. Ritchie sat in the back seat, putting about an ounce of meth—about 50 doses of the drug—into each bag. Echols sat across the aisle from Ritchie; Baker sat directly in front of Echols. Soon a sandwich bag with an ounce of meth dropped over Baker's shoulder and onto his lap. Baker realized that the plan was "to keister the dope and bring it back in" to the jail. The inmate across from Baker, Carr, likewise had a bag fall over his shoulder and began "trying to put it up his butt." Echols could not fit his bag into his rectum, so he gave it to the other inmates to divide up and bring into the jail.

The bus eventually stopped at a landfill so that the inmates could unload the day's trash. While doing so, Baker handed Echols a bag of meth and said that Echols could keep half of it if he brought it into the jail; Echols handed the bag back and said he "didn't want it." Baker put that bag under a dumpster.

Back at the jail, the trash detail hid bags of meth in the shoe room, where the inmates stored their boots and coats in milk crates. The guards strip-searched the inmates before they returned to the housing area. Baker and Ritchie then asked the "hall man"—an inmate with more leeway to come and go within the jail—to retrieve bags of meth from the shoe room. The inmate retrieved two bags. That night the inmates, including Echols, "were all high[,]" using meth both inside

Ritchie's cell and at a "church night" where inmates from different housing pods gathered in one room.

The next morning, a deputy sheriff searched the bus for contraband and found a bag of meth under Echols's seat from the day before. Echols thereafter asked Baker to retrieve a bag of meth from the shoe room, but Baker refused. Sheriff's deputies later found the bags left in the shoe room, under the dumpster, and in the woods. A sheriff's task force officer, Robert Thornton, questioned Echols, who admitted that he—along with the other four inmates—had planned to bring the meth "back into the jail." Soon afterward, 24 inmates tested positive for methamphetamine.

A federal grand jury thereafter charged Echols with one count of conspiracy to possess with intent to distribute methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846; and one count of possessing methamphetamine with intent to distribute, in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), 846, and 18 U.S.C. § 2. After a trial, the jury found Echols guilty on both counts. Echols's Guidelines range was 262 to 327 months, largely because of his lengthy criminal history and status as a career offender. The district judge varied downward and imposed a sentence of 238 months. This appeal followed.

## II.

On appeal, we view the evidence in the light most favorable to the prosecution, asking only if any rational jury could have found Echols guilty beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 319 (1979). Circumstantial evidence can be enough to sustain a conviction; the same is true for an accomplice's uncorroborated testimony. *United States v. Henley*, 360 F.3d 509, 513 (6th Cir. 2004).

A.

Echols argues that the evidence was insufficient to support his conviction for conspiring to possess with intent to distribute at least 50 grams of methamphetamine. That charge required the government to prove that Echols voluntarily joined an agreement or participated in a plan to distribute at least that quantity of meth. *See United States v. McReynolds*, 964 F.3d 555, 561 (6th Cir. 2020); 21 U.S.C. §§ 841(a)(1), 846. A tacit understanding among the parties suffices to show an agreement, and the jury can infer participation from even slight evidence linking the defendant to the conspiracy. *United States v. Potter*, 927 F.3d 446, 453 (6th Cir. 2019). The government "need not show that a defendant participated in all aspects of the conspiracy." *United States v. Odom*, 13 F.3d 949, 959 (6th Cir. 1994).

Here, the government presented evidence that, shortly after Ritchie found the meth, Echols snorted some of it, got high, and knew the drug was real. On the bus, Echols dropped a one-ounce bag of meth—at least 50 doses of the drug—onto Baker's lap. Echols also passed his empty sandwich bag to Ritchie to allow him to divide the meth into smaller quantities and thereby make the drug easier to smuggle into jail. After returning to the jail, Echols both used meth and asked Baker to retrieve a bag of the drug (with 50 doses) from the shoe room. And the inmates brought distribution quantities of the drug back into jail: Baker and chief deputy sheriff Ronny Coleman each testified that the inmates would use this quantity of meth as currency in jail, and the positive drug tests of 24 inmates showed actual distribution. From this evidence, a jury could reasonably infer that Echols voluntarily participated in a tacit plan to smuggle methamphetamine into the jail and to distribute it to the inmates there.

Echols contends that inference is unreasonable given that he gave his bag of meth to the other inmates on the bus and that he refused the bag of meth that Baker offered him at the landfill.

That evidence does suggest that Echols was unwilling personally to smuggle meth into the jail. But the government did not need to show that Echols participated in every aspect of the conspiracy in order to secure a conviction. And the evidence, viewed in the light most favorable to the jury's verdict, did support an inference that Echols participated in other aspects of the plan to smuggle and distribute methamphetamine: Echols passed a bag with 50 doses of meth to Baker on the bus, gave his own empty sandwich bag to package the meth on the bus, and asked Baker to retrieve a distribution quantity of the drug from the shoe room. Sufficient evidence supported the jury's verdict on the conspiracy count.

B.

Echols likewise argues that the evidence was insufficient to support his conviction for possession with intent to distribute between five and 50 grams of methamphetamine. 21 U.S.C. § 841(a)(1). A person with "direct physical control over a thing" has actual possession of it. *United States v. Frederick*, 406 F.3d 754, 765 (6th Cir. 2005). And possession of a large quantity of a drug can support an inference of intent to distribute it, as can actual distribution. *United States v. Garth*, 965 F.3d 493, 496 (6th Cir. 2020); *see United States v. Coffee*, 434 F.3d 887, 897 (6th Cir. 2006). "Distribution means delivery—the actual, constructive, or attempted transfer of a controlled substance." *Garth*, 965 F.3d at 496 (cleaned up).

Here, a jury could have reasonably found two different instances in which Echols possessed a distribution quantity of methamphetamine with the intent to distribute it. First, Baker testified that Echols dropped a one-ounce bag of meth onto his lap, which is evidence of possession and distribution alike. Second, according to Officer Thornton's testimony, Echols admitted that Ritchie gave him a one-ounce bag of meth on the bus, which Echols could not fit into his rectum; Echols then gave the bag to the other inmates so they could divide up the drug and bring it into the

jail. Thus, from that testimony too, a jury could infer that Echols both possessed a distribution quantity of methamphetamine and that he gave it to the other inmates to facilitate its distribution inside the jail. Sufficient evidence therefore supports the jury's verdict on the distribution count as well.

*　　*　　*

The district court's judgment is affirmed.