RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

File Name: 12a0254p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,
                    *Plaintiff-Appellee,*

            *v.*                                              No. 11-2579

JOAQUIN TASIS,

                    *Defendant-Appellant.*

_____

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:10-cr-20442-2—Arthur J. Tarnow, District Judge.

Decided and Filed: October 4, 2012

Before: SUTTON and GRIFFIN, Circuit Judges; WELLS, District Judge.[*]

_____

## COUNSEL

**ON BRIEF:** Joan Ellerbusch Morgan, Sylvan Lake, Michigan, for Appellant. Philip A. Ross, UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

_____

## OPINION

_____

SUTTON, Circuit Judge. Joaquin Tasis and several comrades devised a sophisticated scheme to bill Medicare for fictitious drug therapies, bilking taxpayers out of millions of dollars in the process. When the authorities got wind of the scheme, they prosecuted Tasis and his coconspirators. A jury convicted Tasis, and he appeals. The Medicare scheme was elaborate and complex, but Tasis's arguments on appeal are not. We affirm.

_____

[*]The Honorable Lesley Wells, Senior United States District Judge for the Northern District of Ohio, sitting by designation.

1

I.

Construed in favor of the government, the evidence shows that Tasis and his brother ran the Dearborn Medical Rehabilitation Center, a sham medical clinic in Dearborn, Michigan.  Tasis and several coconspirators recruited homeless Medicare recipients who had tested positive for HIV, hepatitis or asthma.  The clinic paid the "patients" small sums in exchange for their insurance identification, then billed Medicare for infusion therapies that the Center never provided.  The racket worked—for a while.  During four months in 2006, the Center billed Medicare $2,855,785 and received $827,000 in return.  All told, the scheme lasted fifteen months, during which Tasis and his collaborators submitted $9,122,159.35 in Medicare claims.

At some point, a claims auditor figured out what was going on and notified the FBI.  After an investigation, prosecutors indicted Tasis on a series of fraud and conspiracy claims.  At trial, coconspirator Daisy Martinez testified for the government.  Martinez, it turns out, had worked with the Tasis brothers before.  Over Tasis's objection, Martinez testified that she and Tasis had orchestrated a similar scam in Florida.  The court instructed the jury to consider Martinez's testimony about the Florida conspiracy only as it related to Tasis's "intent, plan and knowledge."  R.136 at 30.  The jury found Tasis guilty, and the trial judge sentenced him to 78 months in prison and required him to pay $6,079,445.93 in restitution.

II.

In challenging the verdict, Tasis starts off on the wrong foot.  He claims he should get a new trial because the prosecution violated his rights under *Doyle v. Ohio*, 426 U.S. 610 (1976), which held that prosecutors may not cross-examine defendants about failing to speak with police after receiving *Miranda* warnings.  *Id.* at 611.  In support, Tasis offers up a portion of the trial transcript in which the prosecutor asks him if he has "ever spoken with law enforcement about this case." R.134 at 15.  That line of questioning, to be sure, raises an eyebrow.  But Tasis neglects to mention what happened next: The court *granted* his objection and gave the jury a curative instruction, which was everything Tasis asked for.  After granting the objection, indeed, the court asked Tasis's

counsel, "Do you want a jury instruction or do you want a mistrial?" R.134 at 99. The response? "I think a curative instruction from this Court would remedy the defect." *Id.* at 100. The court's remedy thus answered Tasis's objection, a point Tasis would have done well to mention in his appellate brief. He expressly declined to seek a mistrial and cannot now ask for one on appeal. Any contrary argument is forfeited, indeed waived. *See United States v. Budd*, 496 F.3d 517, 529 (6th Cir. 2007).

Tasis's second argument is cut from the same cloth. Because the trial court allowed Martinez's testimony about the uncharged Florida conspiracy, Tasis contends, the court should have given his requested jury instruction on "multiple conspiracies." *United States v. Warner*, 690 F.2d 545, 551 (6th Cir. 1982). Such instructions prevent "prejudicial spillover of evidence" by explaining that the defendant may be convicted only for "the conspiracy charged in the indictment and not some other conspiracy." *United States v. Cambindo Valencia*, 609 F.2d 603, 625 (2d Cir. 1979) (internal quotation marks omitted). Tasis's proposed pattern instruction would have admonished the jury that it could convict only for the Michigan conspiracy, not for the uncharged Florida conspiracy.

The problem for Tasis is that the court's instruction said the same thing—and said it better. Here is the court's instruction:

> You have heard testimony that [Tasis] committed health care fraud and paid kickbacks at clinics other than the ones charged in the indictment. If you find [Tasis] committed those crimes, you can consider the evidence only as it relates to the Government's claim on the Defendant's intent, plan and knowledge. You must not consider it for any other purpose.

> Remember that [Tasis is] on trial here only for crimes related to DMRC and not for the other acts. Do not return a guilty verdict unless the Government proves the crimes charged in the indictment beyond a reasonable doubt.

R.136 at 30.

Here is Tasis's proposed instruction:

3.08 MULTIPLE CONSPIRACIES--MATERIAL VARIANCE FROM
THE INDICTMENT
(1) The indictment charges that the defendants were all members of one
single conspiracy to commit the crime of _____.
(2) Some of the defendants have argued that there were really two
separate conspiracies—one between _____ to commit the crime of
_____; and another one between _____ to commit the crime of
_____.
(3) To convict any one of the defendants of the conspiracy charge, the
government must convince you beyond a reasonable doubt that the
defendant was a member of the conspiracy charged in the indictment. If
the government fails to prove this, then you must find that defendant not
guilty of the conspiracy charge, even if you find that he was a member
of some other conspiracy. Proof that a defendant was a member of some
other conspiracy is not enough to convict.
(4) But proof that a defendant was a member of some other conspiracy
would not prevent you from returning a guilty verdict, if the government
also proved that he was a member of the conspiracy charged in the
indictment.

3.09 MULTIPLE CONSPIRACIES--FACTORS IN DETERMINING
(1) In deciding whether there was more than one conspiracy, you should
concentrate on the nature of the agreement. To prove a single conspiracy,
the government must convince you that each of the members agreed to
participate in what he knew was a group activity directed toward a
common goal. There must be proof of an agreement on an overall
objective.
(2) But a single conspiracy may exist even if all the members did not
know each other, or never sat down together, or did not know what roles
all the other members played. And a single conspiracy may exist even if
different members joined at different times, or the membership of the
group changed.  These are all things that you may consider in deciding
whether there was more than one conspiracy, but they are not necessarily
controlling.
(3) Similarly, just because there were different sub-groups operating in
different places, or many different criminal acts committed over a long
period of time, does not necessarily mean that there was more than one
conspiracy. Again, you may consider these things, but they are not
necessarily controlling.
(4) What is controlling is whether the government has proved that there
was an overall agreement on a common goal. That is the key.

The court's instruction conveys the same information, just in a more straightforward way. It distinguishes the uncharged Florida conspiracy from the charged Michigan conspiracy, cordons off the Florida scheme as having limited relevance, and directs the jury to convict only if it finds that Tasis committed the Michigan conspiracy. To the court's credit, the instruction does all of that in concise, simple terms. The court did not abuse its "broad discretion," *United States v. Prince*, 214 F.3d 740, 760–61 (6th Cir. 2000), by choosing a plain English jury instruction over a generic (and wordy) pattern jury instruction.

Tasis ends his brief with an evidentiary objection, claiming the trial court improperly allowed Martinez to testify about the Florida scheme in violation of Rule 404(b) of the Federal Rules of Evidence. We disagree.

Rule 404(b) precludes prior-acts evidence in some instances and allows it in others. "Evidence of a crime, wrong, or other act," it says, may not be offered to prove a person's character, but it may be offered for any other purpose, such as to prove "intent" or "knowledge." The court thus may admit prior-acts evidence only if it goes to a noncharacter issue—only in other words if the evidence is "material" to matters "in issue" in the case and "probative" of them, as opposed to evidence used merely to show a defendant's propensity to go down a once-trodden criminal path again. *United States v. Johnson*, 27 F.3d 1186, 1190 (6th Cir. 1994).

The trial court permissibly admitted the prior-acts evidence—Tasis's running of a similar scheme in Florida—for two relevant, noncharacter purposes: to show why Martinez trusted Tasis and to prove Tasis's knowledge of the Michigan conspiracy. *See United States v. De Oleo*, No. 11-1360, slip op. at 5 (6th Cir. Sept. 20, 2012) ("The district court properly determined that the other [fraudulent] clinics were relevant to [the defendant's] knowledge, intent, or plan."). Defense counsel put Martinez's trust at issue by asking during cross-examination if it was "common practice for [her] to trust the people that [she] work[ed] with," to which she replied, "Yes." R.132 at 146. A factfinder could infer that unless Martinez had trusted Tasis, she would not have joined him in a criminal enterprise. The court therefore allowed the prosecution to ask

Martinez on redirect examination if and why she trusted Tasis, which elicited her testimony about building a relationship with him during the Florida conspiracy. *Id.* at 166–67.

Tasis also put his knowledge at issue when he testified about his business relationship with the Medical Center but denied ever knowing about the fraud. During closing argument, the government used Martinez's testimony of Tasis's knowing participation in the Florida fraud as evidence that Tasis had also known about the Michigan fraud. The trial court correctly instructed the jury to consider the prior-misconduct evidence "only as it relates to the Government's claim on the Defendant's intent, plan and knowledge." R.136 at 30.

Tasis's only response—indeed, his entire Rule 404(b) argument—is that the district court "did not go through the steps required for the 404(b) analysis, nor did it make any determination as to the prejudicial versus probative effect of the Government's evidence." Br. at 29. While some cases seem to describe a rigid order of battle for analyzing the admissibility of prior-acts evidence, *see, e.g.*, *United States v. Mack*, 258 F.3d 548, 553 (6th Cir. 2001), that does not mean a district court commits reversible error whenever it fails to take each explicit step in the analysis. No, what a court must do is permissibly exercise its discretion within the boundaries of the Rule. Tasis offers no reason to suspect the district court permitted prosecutors to offer evidence of the Florida scheme for the forbidden purpose of proving Tasis's character.

Tasis adds that the district court should have balanced the evidence's probative value against its risk of unfair prejudice under Evidence Rule 403. But he runs into multiple problems in doing so. There is a reason the court never discussed Rule 403 balancing: Tasis never raised a Rule 403 objection and never asked for Rule 403 balancing. The court at all events implicitly made a balancing determination, evident in the cautious way it admitted Martinez's testimony. The court forbade the prosecution from offering the evidence in its case-in-chief, allowing it only on rebuttal after it became "relevant to a material fact in dispute." R.130 at 12. Balancing between

relevance and undue prejudice is thus part and parcel of the ruling.  No abuse of discretion occurred.

## III.

For these reasons, we affirm.