RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 20a0361p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

─────────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

DESHAUN TISDALE (19-1901); DANGELO DAVIS (19-1903); WINSTON HILL (19-1944),

*Defendants-Appellants*.

Nos. 19-1901/1903/1944

─────────────────

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 2:17-cr-20640—Stephen J. Murphy, III, District Judge.

Argued: November 10, 2020

Decided and Filed: November 18, 2020

Before: SUTTON, THAPAR, and READLER, Circuit Judges.

─────────────────

## COUNSEL

**ARGUED:** James W. Amberg, AMBERG & AMBERG, PLLC, Royal Oak, Michigan, for Appellant in 19-1901. John W. Brusstar, Grosse Pointe, Michigan, for Appellant in 19-1903. Christian J. Grostic, Cleveland, Ohio, for Appellant in 19-1944. John B. Meixner, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee. **ON BRIEF:** James W. Amberg, AMBERG & AMBERG, PLLC, Royal Oak, Michigan, for Appellant in 19-1901. John W. Brusstar, Grosse Pointe, Michigan, for Appellant in 19-1903. Christian J. Grostic, Cleveland, Ohio, for Appellant in 19-1944. John B. Meixner, Jr., UNITED STATES ATTORNEY'S OFFICE, Detroit, Michigan, for Appellee.

———————————

**OPINION**

———————————

SUTTON, Circuit Judge.  Deshaun Tisdale, Dangelo Davis, and Winston Hill were active members of the Playboy Gangster Crips, a street gang in Detroit that allegedly sold drugs, robbed homes, and committed carjackings.  Federal prosecutors indicted them, along with eleven other gang members, in 2017.  A jury convicted Tisdale, Davis, and Hill of a variety of racketeering-related offenses.  We affirm.

I.

The Playboy Gangster Crips operates along Seven Mile in Detroit.  Like most associations, it has admission requirements, an organizational structure, and regular meetings. Unlike most associations, it uses home invasions, robberies, car thefts, and drug distribution to obtain "power" and "control" in the neighborhood.  R.539 at 124, 146.  Membership takes two paths.  The lucky ones can be "blessed in" to the gang with the consent of the current roster. R.540 at 124.  The less lucky ones have to "jump in," requiring them to endure a thirty-three second fight with current members. R.540 at 121–22.  Membership is hierarchical, ranked in this ascending order:   "Tiny Gangster," "Baby Gangster," "Young Baby Gangster," "Young Gangster," and "Original Baby Gangster."  R.539 at 128; R.540 at 132.  Each position comes with special roles.  The role of "shooter," for instance, requires the individual to protect other members.  R.541 at 94–95.

Tisdale, Davis, and Hill held prominent positions in the gang.  Tisdale served as one of the shooters and held rank just one rung below the gang's leader.  He played an active role in the gang, participating in robberies and selling drugs.  He also was the brother of the gang's leader, Jvon Clements, the "Original Baby Gangster."  Hill, a "Baby Gangster," also helped the gang by committing robberies and selling drugs.  Davis "jumped in" to the gang and helped it by committing robberies and selling marijuana and prescription drugs.  He was a "Tiny Gangster."

The gang committed hundreds of home invasions.  The robberies followed a pattern.  A member would "[t]hrow a brick through the window and see if anything about the house would change."  R.545 at 61.  If not, they would enter the house and take what they could.

According to the evidence admitted at trial, Tisdale followed this game plan on the night of January 31, 2017.  He and some other gang members approached a random house on Stout Street, threw a brick through the window, and left.  They met up with Davis and drove back to the house to rob it several minutes later, at that point armed.  But the moment they stepped out of their Jeep, someone shot at them from the house.  Tisdale returned fire with a nine-millimeter handgun.  During the fray, a bullet from the house hit Tisdale's leg.  They returned to the car and left.

Federal agents investigated the gang.  They obtained a warrant to search Tisdale's home and discovered incriminating evidence.  A federal grand jury indicted Tisdale, Hill, Davis, and eleven other gang members on an assortment of racketeering and other charges.  While many of them pleaded guilty, Tisdale, Hill, and Davis did not.  A jury convicted the trio on the racketeering conspiracy charge.  *See* 18 U.S.C. § 1962(d).  It also convicted Tisdale of assault with a dangerous weapon in aid of racketeering and of using a firearm during a crime of violence.  *See* 18 U.S.C. §§ 1959(a)(3), 924(c).  The district court sentenced Tisdale to 252 months, Hill to 246 months, and Davis to 144 months.  The three appealed, and we address the issues one by one.

## II.

*Motion to suppress evidence*.  Tisdale claims that the affidavit used to support the warrant to search his house lacked probable cause.  At stake is whether a "common-sense" assessment of the information presented to the magistrate provides a "fair probability that contraband or evidence of a crime will be found in a particular place."  *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  Stale information does not further the inquiry.  *United States v. Abboud*, 438 F.3d 554, 572–73 (6th Cir. 2006).

The affidavit to search Tisdale's house was just fine.  It provided details from an informant that Clements—Tisdale's brother and the gang's leader—lived at an address on Trinity

Street.  It detailed numerous Facebook posts over seven years related to drug trafficking, illegal weapons possession, and violent acts committed by the gang, all tied to internet protocol addresses linked to the same house.  Tisdale also made comments about having an AK-47 there.  And ongoing surveillance added suspicions.  It tied the Trinity Street house to a separate address where officers had observed other drug deals.  And agents saw two separate instances consistent with drug trafficking at the Trinity Street house in the weeks before the search warrant application.   This information readily ties the Trinity address to ongoing criminal activity.  *Gates*, 462 U.S. at 238.

Tisdale protests that the affidavit did not explain how Tisdale used the house for illegal activities.  But that doesn't change the "fair probability" that officers would find drugs at a house where they observed activity consistent with drug dealing.  *Id.*  Any observed activities, he adds, were stale because they took place a month before officers applied for a search warrant.  But agents submitted the affidavit on March 12, just two and a half weeks after observing trafficking-related activity at the house.   And even if a month had passed, that's not enough time for information to go stale given the ongoing nature of the conspiracy and the ample evidence of drug trafficking connected to the address.

*Motion to sever the trial*.  Davis claims the district court should have granted the motion to sever his trial from the trial of Tisdale and Hill.  Defendants may be indicted together where they collectively participate in the same offense.  Fed. R. Crim. P. 8(b).  While a court may order separate trials if "consolidation for trial appears to prejudice a defendant," Fed. R. Crim. P. 14(a), severance is not the norm.  "Joint trials are favored[.]"  *United States v. Tocco*, 200 F.3d 401, 413 (6th Cir. 2000).  It's not just more efficient to have one trial and one set of evidentiary admissions for all defendants at once, *United States v. Warner*, 971 F.2d 1189, 1196 (6th Cir. 1992), but a joint trial also decreases the risk of inconsistent verdicts, *Richardson v. Marsh*, 481 U.S. 200, 210 (1987).  Severance is appropriate, then, "only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants[.]"  *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

Davis does not clear that bar.  All three defendants were members of the same gang, they were charged in the same conspiracy, and most of the evidence was admissible against each of

them.  Davis did not appear to suffer prejudice anyway.  He does not identify any evidence admissible against only Tisdale and Hill that prejudiced him.  In the end, consistent with its job to "separately evaluat[e] the evidence against the defendants on each count," *United States v. Dimora*, 750 F.3d 619, 631 (6th Cir. 2014), and consistent with the jury instructions to do just that, the jury found Davis guilty of conspiracy but acquitted him on separate assault charges.

*Motion for a mistrial*.  Hill sought a mistrial after three jurors inadvertently saw the defendants in the hallway escorted in handcuffs by marshals.  For "routine security measures," like this one, "rather than situations of unusual restraint such as shackling . . . during trial," defendants must establish actual prejudice to justify a mistrial.  *United States v. Moreno*, 933 F.2d 362, 368 (6th Cir. 1991) (quotation omitted).

No prejudice occurred.  The district court offered to explain to the jurors that they should not give weight to what they saw, but it suggested that might just draw attention to the matter.  Tisdale's attorney agreed, noting he was "afraid to highlight it at this point" and that "as a strategic . . . trial matter . . . we think just leave it as it is."  R.538 at 95.  Even so, the district court reminded the jury that, "[i]f you see or hear anything outside of the courtroom, even here in the building, remember, that's not evidence."  R.538 at 157.  That's not prejudice either.  The defendants got "everything [they] asked for" through curative instructions given and not given, *United States v. Tasis*, 696 F.3d 623, 625 (6th Cir. 2012), and that sufficed.

Hill persists that the court erred by refusing to permit him to establish prejudice.  But that's not right.  The district court *did* offer to question the jurors:  "First of all, I can inquire as to whether there's any prejudice."  R.537 at 190.  After that, the court recognized, and counsel agreed, that making a big deal out of the incident might do more harm than good.  When a trial court is "solicitous of the defendants' wishes on how to question the jurors," the defendants cannot tenably claim prejudice because the court proceeded to listen to them.  *United States v. Jones*, 907 F.2d 456, 459 (4th Cir. 1990).

*Self-defense instruction*.  Tisdale challenges the district court's refusal to instruct the jury on self-defense for his use of a firearm during the Stout Street attempted robbery.  Because Tisdale's attorney did not object after the court instructed the jury, plain error review applies.

Fed. R. Crim. P. 30(d); 52(b). A criminal "defendant is entitled to an instruction as to any recognized defense for which there exists evidence sufficient for a reasonable juror to find in his favor." *Mathews v. United States*, 485 U.S. 58, 63 (1988). But where a rational jury could not find that the defendant acted in self-defense, no such instruction is required. *See Taylor v. Withrow*, 288 F.3d 846, 853 (6th Cir. 2002); *United States v. Khalil*, 279 F.3d 358, 364–65 (6th Cir. 2002).

The exception applies. An individual may use deadly force to defend himself only if he is not "engaged in the commission of a crime at the time[.]" Mich. Comp. Laws Ann. § 780.972(1). Tisdale was in the midst of trying to rob a house. According to fellow gang members, he approached the Stout Street house and threw a brick through the window, preparing to ransack it for valuables. No instruction was required under these circumstances.

And no prejudice occurred anyway. Even if the requested instruction had been given, it's highly improbable that the jury would have used it to let him off on this record.

*Brandishing instruction*. Tisdale adds that the court erred by instructing the jury that firing a gun qualifies as "brandishing." No prejudice occurred. The court instructed the jury that, to find Tisdale guilty of using a weapon in relation to a crime of violence, it must find that he engaged in "activities such as brandishing, displaying, bartering, striking with, and most obviously, firing or attempting to fire a firearm." R.547 at 227. The jury, as it turns out, found that Tisdale both "brandished" and "discharged" the firearm in connection with the attempted robbery. R.435 at 10. Because the jury found that Tisdale discharged the gun, resulting in a higher mandatory minimum than if he just brandished the gun, 18 U.S.C. § 924(c)(1)(A)(iii), it makes no difference whether he brandished it too.

*Committing assault in aid of racketeering*. Tisdale challenges the sufficiency of the evidence to support his conviction for committing a violent crime in aid of racketeering. The predicate crime was "assault[] with a dangerous weapon . . . for the purpose of . . . maintaining or increasing position in an enterprise engaged in racketeering activity[.]" 18 U.S.C. § 1959(a). "The statute requires that an 'animating purpose' of the defendant's action was to maintain or

increase his position" in the gang.  *United States v. Ledbetter*, 929 F.3d 338, 358 (6th Cir. 2019) (quotation omitted).

The jury did not clearly err in finding that Tisdale did just that.  Start with assault with a dangerous weapon.  When someone fires shots at an occupied home, that typically suffices.  *See People v. Hatten*, 2015 WL 966312, at *5 (Mich. Ct. App. Mar. 5, 2015) (per curiam).  Tisdale approached the Stout Street house and threw a brick through the window to see if anyone was home.  When he returned for the robbery, he approached the house in a "black mask" and unloaded a hail of bullets at the house from a nine-millimeter handgun.  R.591-3 at 3.  Someone inside called 911 to report the shooting, noting that he feared for his safety and that he had kids in the house.  A rational finder of fact could find that Tisdale committed an assault with a dangerous weapon when he opened fire on the Stout Street home.

What of Tisdale's objectives?  Did he commit the assault to maintain or increase his position in the gang?  Remember that Tisdale was a "shooter" in the gang, which meant that, if something happened, he was expected to protect other gang members.  R.541 at 94–95.  According to his colleagues in the gang, he fired back at the Stout Street house to do just that.  That's what someone of his rank was expected to do, and the statute applies to actions designed to "maintain" status.  *Ledbetter*, 929 F.3d at 358.  A jury could rationally find that Tisdale earned the conviction.

*Racketeering conviction.*  Davis appeals the district court's denial of his motion for acquittal on his racketeering conspiracy charge.  *See* 18 U.S.C. § 1962(d).  To prove guilt of a RICO conspiracy like this one, the government had to show that Davis "adopt[ed] the goal of furthering or facilitating the criminal endeavor."  *Salinas v. United States*, 522 U.S. 52, 65 (1997).

The jury heard ample evidence of Davis's efforts to facilitate illegal gang activities.  Davis actively participated in robberies to make the gang money.  He held a rank in the  gang, regularly participated in gang meetings, and even paid dues.  Davis "jumped in" to the gang and openly advertised his membership, whether on Facebook or elsewhere.  R.542 at 90.  The jury had plenty of reasons to find that he advanced the gang's interests.

Davis pushes back on the ground that the jury acquitted him of multiple predicate acts. True enough, a *substantive* RICO charge requires the government to prove "two or more predicate acts." *Salinas*, 522 U.S. at 65; 18 U.S.C. § 1962(c). But the statute, namely "[t]he interplay between subsections (c) and (d)[,]" "does not permit us to excuse from the reach of the conspiracy provision an actor who does not himself commit or agree to commit the two or more predicate acts requisite to the underlying offense." *Salinas*, 522 U.S. at 65. Davis is that actor. While the jury might have acquitted him of the underlying predicate acts for a substantive RICO conviction, they could still find him guilty of RICO conspiracy. *Id.* at 63.

*Drug quantity*. In challenging their sentences, Tisdale and Davis appeal the drug-quantity determination. Only if a district court's "drug-quantity determination" is "clearly erroneous" will we reverse it. *United States v. Jeross*, 521 F.3d 562, 570 (6th Cir. 2008). The district court can make a reasonable estimate based on physical evidence or testimony. *See id.*; *United States v. Walton*, 908 F.2d 1289, 1302 (6th Cir. 1990).

The district court did not clearly err. Federal agents learned that the gang moved between half a pound and a pound of marijuana every day, which would result in hundreds of kilograms between 2014 and 2017, when Tisdale and Davis played an active role in the gang. Trial testimony revealed a well-oiled dealing operation. The gang bought marijuana by the pound and sold it in "[b]ags, quarters, ounces," first at a Sunoco station on Seven Mile, then from homes in Detroit. R.545 at 86–87. The large quantities prompted gang members to carry weapons "[i]n case somebody tried to rob" them. R.545 at 87. Just as federal agents worked in shifts to monitor the gang's drug-selling operation, the gang used a shift schedule to streamline its sales. The court's finding amounted to a reasonable estimate.

Tisdale argues that he should be responsible for a lesser amount because he did not have a leadership role in the gang. That is being too humble. Tisdale achieved the second highest rank in the organization and actively sold drugs. A criminal "defendant may be sentenced based upon quantities of drugs attributable to other members of a conspiracy, provided the district court finds that those quantities were known . . . or were reasonably foreseeable" to the defendant. *United States v. Moss*, 9 F.3d 543, 552 (6th Cir. 1993). Tisdale committed robberies, sold drugs, and obtained leadership roles, all in the name of advancing the interests of the gang. We are

hard-pressed to see how the drug quantities involved were not "reasonably foreseeable" to him. *Id.*

Davis advances the same claim, prompting the same conclusion. He actively participated in the conspiracy, and, as he acknowledges, a co-conspirator is responsible for reasonably foreseeable sales of drugs. That's what happened with Davis too.

What of *United States v. McReynolds*, 964 F.3d 555 (6th Cir. 2020)? *McReynolds* is not the Rosetta Stone that Tisdale and Davis claim. It applied these same principles and did not purport to chart a new path, much less one inconsistent with Supreme Court and Sixth Circuit authority. In saying that a district court cannot casually "hold a defendant to the entire conspiracy-wide drug amounts at sentencing," 964 F.3d at 564, *McReynolds* did not make new law. And in saying that a district court must make "findings" that the defendant appreciated the scope of the conspiracy, *id.*, the decision did not make new law. Unlike *McReynolds*, where the lower court wholly failed to "say why it was holding [the defendant] accountable for" the drug quantity in question, *id.*, the district court hewed to these requirements here. At Tisdale's sentencing, among other explanations, it reasoned that Tisdale's "position in the conspiracy" helped "make this entire operation go[.]" R.549 at 7. At Davis's hearing, among other explanations, it reasoned that Davis got "involved in gang activity" by "selling drugs and . . . going along to rob prostitutes," R.590 at 7, and found that he "had knowledge" of the gang's drug dealing distribution "as demonstrated by the body of evidence on Facebook" and through other testimony, R.590 at 13. The court even acknowledged that Davis would not be "held to the evidence or convicted on robberies that were done or drugs that were sold before [he] joined the conspiracy." R.590 at 26.

*Davis's guidelines range*. Davis argues that the district court relied on acquitted crimes to sentence him. But he fails to identify what conduct the district court improperly relied on. The presentencing report recommended an offense level of 30 based on Davis's racketeering conspiracy conviction and two specific offense characteristics. The district court followed that recommendation without relying on counts for which the jury acquitted Davis. Davis insists that the district court relied "solely on the acquitted overt acts and uncharged crimes." Appellant's Br. 23. That's false. Davis's 144-month sentence falls squarely in the recommended guidelines

range based on his participation in the racketeering conspiracy, for which the jury found him guilty. Even if that were not the case, trial courts may rely on acquitted conduct in sentencing criminal defendants. *United States v. White*, 551 F.3d 381, 386 (6th Cir. 2008) (en banc).

*Ineffective assistance of counsel*. Hill claims that his counsel was ineffective because he failed to object to several points in his presentencing report. But our custom is that "we generally do not review such claims on direct appeal, preferring that the defendant raise such claims (if at all) in a § 2255 petition." *United States v. Quinlan*, 473 F.3d 273, 280 (6th Cir. 2007). That custom serves a few ends. Most importantly for Hill, he stands "a better chance" by filing under § 2255 because he can "call his former counsel as a witness" and present evidence of ineffective assistance. *United States v. Taglia*, 922 F.2d 413, 418 (7th Cir. 1991). We cannot review extrinsic evidence on direct appeal, which is one reason why claims of ineffective assistance in that posture "almost always fail." *Id.* The custom also accounts for the position of the government by ensuring that it has an opportunity to put any arguments in the context of the final resolution of the case and to introduce evidence of its own. We see no good reason for sidestepping this custom today.

We affirm.